Filed 3/24/14  In re S.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.C.,<br><br>    Defendant and Appellant. | F066909<br><br>(Super. Ct. No. 11CEJ600096-3)<br><br>**OPINION** |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Ralph L. Putnam, Judge. (Retired judge of the Fresno County Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*    Before Cornell, Acting P.J., Gomes, J., and Franson, J.

## INTRODUCTION

On February 1, 2013, a petition was filed, pursuant to Welfare and Institutions Code section 602, alleging that appellant, S.C., committed second degree robbery of Maria S. on January 25, 2012.

On February 26, 2013, a second amended petition was filed, pursuant to Welfare and Institutions Code section 602, alleging that on January 1, 2013, appellant committed grand theft from a person, Yolanda S. (Pen. Code, § 487, subd. (c), count 1), and second degree robbery of Yolanda S. (Pen. Code, § 211, count 2). Both offenses were alleged to be felonies. After a contested jurisdiction hearing on February 26, 2013, the juvenile court found the allegations to be true.

At the disposition hearing on March 12, 2013, the juvenile court found appellant to be a ward of the court, and placed her on probation upon various terms and conditions, including that she be detained at the juvenile justice campus for 180 days. The court found that appellant's total aggregate, maximum term of confinement, including potential confinement from a prior petition, was eight years, with custody credits of 185 days for time already served in confinement. The court stayed appellant's sentence on count 1.

On appeal, appellant argues that a field show-up violated her due process rights. Appellant also contends the juvenile court abused its discretion in permitting the victim of a different offense to enter the courtroom during the hearing.

## FACTS

### January 25, 2012 Robbery

On the morning of January 25, 2012, Maria S., who was then 14 years old, was waiting with a friend at a bus stop to go to school. Maria saw appellant and another girl at the bus stop. Maria had never seen the girls before. Both girls standing at the bus stop were pretending to be waiting for the bus. One girl was wearing black pajama bottoms with orange basketballs on them. Maria identified appellant as the girl wearing pajamas.

Appellant yanked Maria's gold necklace off her neck. Maria got a good look at appellant, whose hair looked as though she had just gotten out of bed.

After taking Maria's necklace, appellant and her friend ran away. Maria had a red mark on the back of her neck. Maria borrowed a cell phone, called her mother, and told her what happened. Maria's mother reported the incident to the police. Maria also told her father about the incident and gave him appellant's description. Maria's father saw appellant walking with a friend. Maria's parents called the police. Maria's mother picked Maria up from school a few hours after the robbery, right after lunch.

Later that day, an officer drove Maria, with her father, in a patrol car to a house and asked Maria if the girls outside were the girls from the bus stop. The girls were not handcuffed. Although appellant was not wearing the same clothes as she was earlier, Maria recognized her as the person who took her necklace. The other girl with appellant was the same girl who was with appellant at the bus stop.

Maria recognized appellant by her height, her hair, and her face. Although Maria told an investigating officer that appellant had scars on her face, appellant did not have scars on her face at the hearing. At the hearing, Maria explained that appellant had scratches on her cheek the day she stole the necklace. Maria was not close enough to see the scratches on appellant's face when Maria made the identification from the police car.

When asked on cross-examination whether her father identified the two young women who had been at the bus stop, Maria replied affirmatively. When asked if her father told her to identify those individuals, Maria replied, "[y]es." When asked on redirect the clarifying question concerning whether she told the officers who the girls were because her "dad wanted [her] to," Maria replied, "[n]o." Maria further elaborated that the identification of appellant had nothing to do with anything her father said to her. Maria's father did not describe appellant to Maria prior to her seeing appellant.

Fresno Police Officer Brian Chadwick contacted appellant at her house. Chadwick searched appellant's bedroom. Although he did not find the stolen necklace,

3

Chadwick found maroon or burgundy pajama bottoms with orange basketballs on them and boots. Chadwick did not search the entire house. During the in-field identification, Chadwick stood with appellant and her friend. Appellant had a scar on her forehead and scratches on her left check.

Appellant testified that she did not steal anything from Maria. Appellant stated she was at home when the incident occurred. Appellant denied owning pajama bottoms with a basketball design but believed that the pajama bottoms found by Chadwick could belong to her brother.

### January 1, 2013 Robbery

At about 2:00 p.m., on January 1, 2013, Yolanda S. was across the street from her home with a group of kids. As appellant walked past Yolanda, appellant grabbed a gold necklace Yolanda was wearing and yanked it off her neck. Appellant ran away. Yolanda saw appellant go down the alley on "C" Street. Yolanda and her brother briefly chased appellant but lost sight of her. Yolanda then got into a car with her brother to catch up with appellant. When they reached appellant, appellant ran inside a residence.

Yolanda called the police and waited outside the residence she had seen appellant enter. When the police exited the residence with appellant, Yolanda identified her as the person who had stolen her necklace. The necklace was not recovered by the police. At the hearing, Yolanda said that she recognized appellant's face.

Appellant's mother testified that appellant was at home with her between 2:35 to 2:45 p.m., before appellant left to go to her friend's home. Appellant's friend testified that appellant arrived at her home, but she could not recall her time of arrival. Appellant told her friend someone was chasing her. The friend never saw appellant with a necklace.

4

## IN-FIELD IDENTIFICATION

Appellant challenges her in-field identification after the January 2012 robbery because she believes it was overly suggestive, violated her due process rights, and prejudicially affected the outcome of her case. We disagree.

We find merit to respondent's initial contention that appellant has raised this issue for the first time on appeal and the matter is, therefore, subject to forfeiture and waiver. In *People v. Cunningham* (2001) 25 Cal.4th 926, 989 (*Cunningham*), the Supreme Court found waiver applicable where the defendant waited until after the prosecution had presented its entire case before objecting to the reliability of the identification procedures employed by investigators. Here, as in the *Cunningham* case, defense counsel waited until his closing argument to argue that the in-field identification was unduly suggestive. Even so, defense counsel did not bring a motion challenging the in-field identification. This issue is forfeited.

Even if there had been a timely objection to the juvenile court, we fail to find any serious infirmity with the procedure adopted by the investigators here. The question of constitutional reliability depends on whether the identification was unduly suggestive and, if so, whether the identification itself was nevertheless reliable under the totality of the circumstances. In determining the totality of the circumstances, courts take into account the opportunity of the witness to view the perpetrator at the time of the crime, the accuracy of the victim's prior description of the perpetrator, the level of certainty demonstrated during the identification, and the time between the crime and the identification. (*Manson v. Brathwaite* (1977) 432 U.S. 98, 104-107, 114; *Cunningham*, *supra*, 25 Cal.4th at p. 989.)

The defendant bears the burden of demonstrating that the identification procedure was unreliable. (*Cunningham*, *supra*, 25 Cal.4th at pp. 989-990; *People v. Ochoa* (1998) 19 Cal.4th 353, 412 (*Ochoa*).) Although a one person show-up may pose a danger of suggestiveness, it is not necessarily inherently unfair. All of the circumstances must be

5

considered.  (*Ochoa*, *supra*, 19 Cal.4th at p. 413; *People v*. *Medina* (1995) 11 Cal.4th 694, 753.)

Single person show-ups for the purpose of in-field identification are encouraged because the element of suggestiveness inherent in the procedure is offset by the reliability of an identification while the events are still fresh in the witness's mind.  Single person show-ups may be used so long as the procedures used are not so suggestive as to give rise to a substantial likelihood of misidentification.  (*In re Carlos M*. (1990) 220 Cal.App.3d 372, 387.)  Although appellant was standing next to an officer during the in-field identification, the identification occurred hours after the incident and appellant was not handcuffed.  We find that the show-up was not unconstitutionally suggestive.

We further find that the in-field identification was not unreliable under the totality of the circumstances test.  Maria saw appellant with appellant's friend at the bus stop prior to the incident.  When appellant grabbed the necklace from Maria's neck, Maria could see appellant's face up close.  Maria noticed scratches on appellant's face and possibly a scar.  Maria's father saw appellant walking, with a second girl, in the pajamas with basketballs.  Although appellant had changed her attire by the time of the in-field identification, Maria recognized appellant by her face, hair, and height.  Maria's identification occurred only hours after the robbery.  Also, Maria identified appellant as the robber at trial.

When Chadwick searched appellant's room, he found maroon or burgundy pajama bottoms with orange basketballs on them and a pair of boots.  Although Maria described the field of the pajama bottoms as black, these items of clothing still closely matched the clothes Maria described appellant was wearing during the robbery.  Officer Chadwick saw both a scar and scratches on appellant's face.  These observations provided corroboration of Maria's identification of appellant.  Appellant has failed to meet her burden of demonstrating the show-up was unfair.  We reject appellant's constitutional challenge to Maria's in-field identification of her.

6

**TESTIMONY OF YOLANDA S.**

Appellant contends the juvenile court abused its discretion when it failed to exclude Yolanda S. as a witness because she was present in court during the part of the proceedings involving the January 2012 robbery.  Appellant argues she was denied due process of law under the Fifth and Fourteenth Amendments of the United States Constitution.  We disagree and find that the error, if any, was harmless beyond a reasonable doubt.

*Evidentiary Hearing*

Maria S. spoke English and did not require a translator during her testimony.[1]  At the beginning of the hearing, Maria's father was present and so was Barbara Dodds, a victim advocate from the probation department.  Appellant's friend, her mother, and her aunt were also in the courtroom.  The court ordered the exclusion of any witnesses not currently testifying.  After defense counsel began his closing arguments concerning the January 2012 incident, the juvenile court noticed there were other people in the courtroom.  The people in the courtroom were Yolanda S. and Jabes Cabrera, the certified Spanish interpreter for the Superior Court.  The prosecutor indicated they were present as witnesses for the January 2013 allegations.  The court ordered them out of the courtroom.

The prosecutor had apparently thought they were finished with the January 2012 case, and people were let into the courtroom because the prosecutor was not anticipating having closing argument until the end of both cases.  The prosecutor indicated she did not usually handle two petitions at one time and "was taken off guard when [appellant] was called to the stand."  The prosecutor was not thinking about the other people entering the courtroom, but about appellant's testimony.

---

[1]     The prosecutor represented to the juvenile court that Maria's father only spoke Spanish.

7

Defense counsel stated he did not understand how the prosecutor could not understand his client was testifying, his client had a right to testify, and defense counsel never indicated she would not testify. Defense counsel noted that the two incidents were very similar and stated he did not know if Yolanda should testify. The juvenile court noted that Yolanda should not have been in the courtroom.

The court called Cabrera, who testified that he had met Yolanda ten minutes earlier. Cabrera was sitting next to Yolanda during proceedings involving the January 2012 robbery. He did not interpret the proceedings for Yolanda. When the court ordered them out of the courtroom, Yolanda asked him what the court had said. Cabrera did not think Yolanda understood English and told Yolanda they had to leave the courtroom.

The court called Dodds, who was also sitting with Yolanda. Dodds explained that she did not speak Spanish and Yolanda was a Spanish speaker. Dodds only told Yolanda that Yolanda had a right to have an advocate present during the hearing. Dodds did not tell Yolanda anything about the prior robbery. Dodds also told Yolanda about the process of giving testimony and taking the oath. Dodds had no other conversation with Yolanda. The juvenile court found that there was no prejudice to appellant and permitted Yolanda's testimony.

During her testimony, Yolanda stated that she spoke only a little English. She also stated when she was at the hearing on the other case, she did not understand anything that was happening. Twice during her testimony, Yolanda started to answer questions before the interpreter could finish his translation of the question. On cross-examination, defense counsel stated that there were times when Yolanda appeared to understand the question before the interpreter finished his translation and asked Yolanda if she was able to understand the questions without translation. Yolanda replied that she understood a "word here and there" but not an entire sentence.

*Analysis*

Pursuant to Evidence Code section 777, a trial court may exclude any witness from the courtroom who is not at that time under examination so that witness does not hear the testimony of other witnesses. The purpose of a witness exclusion order is to prevent tailored testimony and aid in the detection of testimony that is less than candid. (*People v. Valdez* (1986) 177 Cal.App.3d 680, 687.) The remedy for violation of the exclusion order is usually contempt rather than disqualification of a witness. (*Id.* at p. 692.) Where fault is shared by counsel or the party in violating the order, a court can order the disqualification of a witness. Only where there is no fault by counsel or a witness, is contempt the sole sanction. (*Id.* at pp. 695-696.)

Where a witness exclusion order is violated, the violation does not mean a defendant has been denied a fair trial. (*People v. Adams* (1993) 19 Cal.App.4th 412, 436.) The trial court's ruling is reviewed on appeal for abuse of discretion. (*People v. Tully* (2012) 54 Cal.4th 952, 1004; *People v. Wallace* (2008) 44 Cal.4th 1032, 1053 (*Wallace*).)

From the comments of the juvenile court, the prosecutor, and defense counsel, it appears that Maria S. and victim advocate Dodds were in court during Maria's testimony. At some point just before or during appellant's testimony, Yolanda and interpreter Cabrera entered the courtroom and stayed through counsels' closing arguments until the court ordered them to leave the courtroom. From the testimony of Yolanda, Cabrera and Dodds, it is undisputed that Yolanda understood very little English, required a translator during the proceedings, and that while she was in the courtroom during some or all of appellant's testimony and counsels' closing arguments concerning the January 2012 incident, these proceedings were not translated for her.

The trial court did not find a willful violation of its witness exclusion order by the prosecution, Yolanda, or the translator. Dodds had a right to be in the hearing as the victim advocate for both Maria and Yolanda. The prosecutor did not appear to be aware

9

that Yolanda and the translator entered the courtroom during appellant's testimony. The prosecutor explained that she was focusing on appellant's testimony. It is unlikely that Yolanda and the interpreter heard the juvenile court's witness exclusion order. There is no evidence that the prosecutor, Yolanda, or the interpreter were acting contemptuously.

Most importantly, the record establishes that Yolanda understood very little English. The chance of Yolanda hearing testimony regarding an unrelated incident that happened a year before her own that would unduly influence her own testimony is remote. The potential for undue influence from hearing the proceeding in a language the witness does not understand, or that she understands poorly, is even more remote. Even if Yolanda understood some of the proceedings from the earlier incident, appellant has failed to establish how this information could have affected Yolanda's testimony or how it was prejudicial.

A defendant has to explain how a witness's attendance at the proceeding altered the outcome of his or her trial. A defendant who has failed to do so has also failed to demonstrate prejudice. (*Wallace*, *supra*, 44 Cal.4th at p. 1053.) Appellant has failed to show how Yolanda's attendance during the hearing on the other incident affected the outcome in the second proceeding. Finally, we find that if any error occurred in the juvenile court's order permitting Yolanda to testify, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.)

## DISPOSITION

The juvenile court's orders and findings are affirmed.

10